This is an appeal of the district court's decision that the fund's partial denial of arbitrary and capricious. On its face, this seems a complicated case. It involves many facts and a lengthy record that goes back 40 years, but it really comes down to the simple issue of whether the district court properly applied the arbitrary and capricious standard, and it's clear that it did not. Because the plan document gives the fund's trustees discretion to determine benefits, the arbitrary and capricious standard applies. That's not in dispute. And the law on this circuit is clear as to what the arbitrary and capricious standard requires. Counsel, Counsel, doesn't this case depend totally on findings of fact? Because if the facts are as the district court found them, then what was done was arbitrary. And yes, the standard is arbitrary and capricious. Leave aside the question of conflict, which is an interesting one anyway. But basically, it is, whom did the district court believe as to what this guy's role was and as to what these things were saying? And that's a factual question. And I find it very hard for a court of appeals to get involved. Well, our position, Your Honor, is that the manner in which the court sifted through the facts, weighed the evidence, and came up with its own conclusions is in fact contrary to the arbitrary and capricious standard. Is there an exclusion for supervisors in the plan? Not in the plan document. The plan document defines benefits by reference to being in the bargaining unit. Right, and so that supports the district court's inclusion that the determination that he wasn't covered because he was a supervisor is indeed arbitrary and capricious if the plan doesn't contain a supervisor exclusion. Well, the plan conditions benefits on being in the bargaining unit, but the plan does not define what the bargaining unit is. It's addressed in the briefs. The plan can't define the bargaining unit because that's beyond its powers. That's the role of the bargaining parties. So the plan – What is there to support the contention that supervisors are excluded from coverage? Sure. In looking at the bargaining unit and how it was defined in the CBA, there was, of course, no express inclusion or exclusion. So the trustees had to look to extrinsic evidence, and the evidence in the record was based on a number of pieces that, when added together, led to the inescapable conclusion that supervisors were intended to be excluded. It didn't necessarily start or end with any piece of evidence, but a good starting point was a list that identified supervisors. There was four individuals on that list. The trustees then went and looked at the contribution records for those individuals and found overwhelming and striking similarities. There were notations on each of the four individuals. But there were contributions at some time, and there weren't contributions at other times, when what he was doing was exactly the same during all of that time, and there weren't records. So it becomes a question of who one believes as to what was going on. I would agree, Your Honor, and the trustees had evidence to support their conclusion, in fact, substantial evidence, and the district court waived that evidence away and substituted its own judgment for that of the trustees. A good example of that would be there were two different letters from Mr. Latronica's employer, one from 1992 and one from 2016. The one from 1992 indicated that Mr. Latronica was not a covered employee, a bargaining union employee. The 2016 letter, which was sent 21 years after he stopped working for the company, said, you know what, I think he was a covered employee. The trustees looked at that conflicting evidence and determined, you know what, the contemporaneous letter, the letter from 1992 is the more reliable evidence. That's the one that's relied on in their decision to deny benefits. And the district court said, no, it's not. The 2016 letter is. That goes against the arbitrary and capricious standard. That's the district court inserting its own judgment for that of the trustees, which, when the trustees judged it, was actually the better judgment because it was based on a contemporaneous. Council, I have another problem. The most recent contracts, CBAs, clearly exclude supervisors. And yet, during all of this time, he was paid, and you all agree that he is covered. And his job hasn't changed in any of that time. He's always been doing the same thing. I mean, you both have a question of whether in the earlier contract supervisors were covered or not, but you also have a question of whether he was a supervisor, and he's done the same thing throughout, and he is covered. Now, you say in one of your briefs that the contract that shows that is a yet more recent one, but counsel for your side at one point said that the CBA that was relevant over the years that he was clearly covered was the same. So that was a concession that you're stuck with. You have one minute. Thank you. Your Honor, I'm glad you brought up that CBA because for the points I mentioned, I believe it has no evidentiary value as to the bargaining party's intention during the disputed period. It covered a period when there was no longer an obligation to contribute to the fund. So you can't look at that exclusion for supervisors and determine what Mr. Latronica's status is. But you said that there was a concession. There was a concession that was made that said it was the same then as it is in the one that you're talking about. I don't know if it's conceded, but I will say that the trustees' determination, which is really what the court should look at, did not hinge at all on that CBA for good reason because it had no bearing on his covered status. Well, that's what makes it arbitrary and capricious because it did have direct bearing. I don't believe it did because, again, it didn't impose an obligation to contribute to the fund. All right. You've saved three minutes for rebuttal. We'll hear from the other side. Thank you. Thank you. Can I be heard? Yes. Oh, great. Thank you, Judge. May it please the court. My name is Joshua Weiner of Coughlin-Duffy on behalf of Appellee John Latronica. It has long been held by the courts that a risker should be liberally construed in favor of protecting the participants in an employee benefit plan. Yet in denying Appellee John Latronica nearly half of the pension service credit to which he was entitled by virtue of his 40-plus year career, Appellant rejected this very basic premise and instead has engaged in a multi-year game of linguistic and legal gymnastics in refusing to pay Mr. Latronica the benefits of a pension plan he had worked so hard for during his 40-plus year career. As the district court correctly concluded, Appellant's denial of benefits constituted a willful abuse of discretion devoid of any probative evidence in the administrative record and buttressed by a flimsy and specious legal narrative. John Latronica worked the entirety of his professional career over 40 years as an audio technician, engineer, and operator for various companies that provided such services under contract with the New Jersey Sports and Exposition Authority and specifically located at the Meadowlands Racetrack. In addition to his myriad job responsibilities, Mr. Latronica also served throughout the majority of his career as the shop steward for Local 1430, the union for which he remained a lifelong member and his bargaining unit consisted of, quote, all employees who are or may in the future engage in the operation, maintenance, and servicing of audio and video closed circuit television systems and associated equipment. Mr. Latronica was at all times during his entire career of services engaged in all of the foregoing. That is readily admitted fact that Appellant does not and has not denied. Both parties similarly admit that eligibility in the ad issue pension is solely predicated on an employee being a member of the Local 1430 bargaining unit as defined by the CBA. So if Appellant acknowledges that Mr. Latronica was at all times during his career engaged in the very job duties upon which membership in the bargaining unit was predicated, what is this dispute about and why are we here? Well, despite the foregoing, Appellant, and without any basis in probative fact, determined that Mr. Latronica was only entitled to pension service credit for the last 16 years of his employment, beginning in 1995 while an employee of the NJSEA. Its reasoning was that prior to 1995, Mr. Latronica was apparently employed as a supervisor, despite the readily admitted fact that Mr. Latronica's job duties and status as shop steward to the union never changed and was engaged in those same duties and responsibilities throughout the entirety of his professional career, including while employed by the NJSEA. So if that's the case, why did Appellant deem him only eligible for pension service credit for those years he was employed by the NJSEA? Certainly Appellant provided no reasonable explanation either in its initial pension determination or the written decision of the full Board of Trustees disposing of Mr. Latronica's subsequent appeal of said determination. Indeed, as the District Court correctly concluded in its detailed 37-page written opinion, Appellant's determination was arbitrary and capricious and a blatant abuse of its discretion. Now, while admittedly this Court's standard of review is de novo, the District Court's thorough and detailed opinion provides this panel with a meticulous and well-reasoned roadmap for it to follow. And what was it that the District Court determined? Well, first it correctly concluded that, in accordance with Second Circuit precedent, as Appellant was jointly administered by both employer and union employees, it suffered from an inherent conflict of interest. The District Court then determined that there existed case-specific evidence demonstrating that this conflict of interest influenced the Fund's decision. And for this reason, the Fund's conflict of interest was relatively important and was to be weighted accordingly by the Court in conducting its review of the Fund's determination. The District Court then applied the evidence in the administrative record against this conflict and determined there existed no genuine issue of material fact that Appellant's interpretation of the plan that supervisors were excluded from entitlement to pension benefits was indeed an abuse of the Fund's discretion. And applying this same standard, the District Court further determined that even if the plan could reasonably be interpreted as excluding supervisors, there existed no genuine issue of material fact that the Fund's determination that Mr. Latronico was employed as a supervisor… …about whether it was saying there is no material issue of fact, it was not very clear. You're saying that it did do a summary judgment even if it didn't quite use the right language. Well, I would respectfully disagree. I mean, it cited to the summary judgment standard and then applied said standard in conducting its analysis. That was the way in which I read the opinion, Judge. The District Court then found Appellant's determination that Mr. Latronico was employed as a supervisor was based on mere assumptions without support in the record and utilizing reasoning that was inherently contradictory and that such unreasonable as according to the District Court is exacerbated by the Fund's conflict of interest. The Court stated nearly two decades ago, or this Court, I should say, stated nearly two decades ago that ERISA is intended to help claimants process their claims efficiently and fairly. They were not intended to be used as a smokescreen to shield the benefits fund from legitimate claims. Yet as the District Court correctly found, that is indeed what Appellant has done and continues to do, hiding behind the arbitrary and capricious standard in creating an amorphous legal premise unsupported by the administrative record in justifying its decision to deny Mr. Latronico the full pension benefits for which he worked so hard over 40 plus years. This is not what ERISA intended, nor is it the result that ERISA was promulgated to create. And to reiterate, the District Court correctly determined that the administrative record was bereft of any probative evidence providing a legitimate basis for the determination that Mr. Latronico was ever employed as a supervisor. Moreover, the District Court also correctly concluded that whether or not Mr. Latronico was ever employed in the supervisory capacity was of no moment since neither the planned documents nor the collective bargaining agreement that were part of the administrative record made eligibility in the pension plan predicated on an employee's supervisory status. It was solely a function of whether an employee was engaged in the job duties of those in the bargaining unit as expressly defined in the CBA. Again, Appellant has not and does not dispute that Mr. Latronico had always been engaged in those very job duties throughout the entirety of his professional career. And additionally, Appellant's contention that it did not weigh various issues for appeal because they were addressed by the District Court sua sponte and thus passed upon though not argued is not accurate. On the issue of remand, the District Court's decision not to remand was indeed argued by Appellee, not the Appellant, as Appellee argued in the summary judgment papers that the proper remedy was full retroactive and prospective pension payments, not a remand. Nowhere in this motion papers or anywhere else for that matter did Appellant ever oppose Appellee's choice of remedies. And as it failed to raise that issue before the District Court, it is waived the right to do so on appeal. If anything, Appellee conceded the case was right for judicial determination on summary judgment motion and that it did not require any further review. As the issue of attorney's fees, which were also granted by the District Court, Appellant never argued that. that says it's not appealable until the amount has been set. In other words, you have to go back down and have the amount set, and then they can appeal if they want to. I would agree with that, Judge Chin. I would agree with that. So thank you. As to the issue of the conflict of interest, it's important to note that on summary judgment, Appellant readily acknowledged the existence of a conflict of interest, citing to this court's very precedent, only contesting the way it should be accorded by the District Court, not the existence of said conflict. Finally, Appellant's contention in its reply brief that Appellee has conceded its arguments were not expressly opposed in its brief is simply incorrect, both factually and as a matter of law. Appellee repeatedly argues in its brief that the District Court probably granted summary judgment, citing to the applicable case law, the administrative record, and various portions pulled from the District Court's 37-page opinion. Thank you, Judge. The District Court's judgment was just, legally sound, and the right decision. It is thus respectfully submitted that the District Court's thorough and thoughtful written opinion granting plaintiff summary judgment and denying defendants cross-motion for summary judgment be affirmed in its entirety. Thank you. And with the time I have remaining, I'd be happy to answer any questions from the panel. Thank you. We'll hear the rebuttal. Mr. Gormley, are you on mute? Thank you, Your Honor. First point is, while ERISA may be intended to be liberally construed for the benefits of participants and beneficiaries, it also, as you know, imposes very strict fiduciary duties, and under that, trustees have an obligation to safeguard the plan's assets. They have an obligation to look and thoroughly consider the evidence before granting benefits if an individual appears not to be entitled to them, and that's exactly what they did here. The second point, as to the fact that Mr. Latronica had the same duties and responsibilities during the period he worked for NGSA, I would again point out that there was no – Do you agree or disagree that for the 30 years or so, he did basically the same thing? It appears that he did. It just appears that the bargaining parties – And so the fund argues for some of that time, he was covered, and for some of that time, he wasn't covered. Is that your argument? Indeed. It appears that the bargaining parties, at some point, intended to include supervisors. At some point, they excluded, and that's what it shows, particularly based on the records that show at some point, contributions were made, not just for Mr. Latronica, but for other individuals on the supervisor list, and then they stopped. And then when contributions resumed for Mr. Latronica again in the late 90s, once again, there's no CBA that covered that employer. We have no idea whether employees, supervisors were excluded or included under those CBAs. But you conceded that the CBA during that period was the same as the one now that excludes supervisors. That's a concession that was made. I don't know that – This has to be an issue of law, and it has to be an issue of arbitration, but that concession is, I think, totally devastating to your notion that during a long time, when supervisors were excluded, this person was covered and has done the same job throughout. You have one minute. Thank you. I would have to look at the exact language of the Statement of Facts and the Summary Judgment Briefs to determine the scope of the concession because I don't believe that it was conceded that the so-called NGSA CBA applied to the period from 1995 to 2011. I believe it was just conceded as to what the document said. I think the document speaks for itself, and speaking for itself, the document does not apply to 1995 to 2011. It didn't come into effect until December 1, 2011. Another point I make is that he said the record was bereft of any probative evidence that he was ever employed as a supervisor. That's just flat-out wrong. Mr. Matronica's own statement about what he did and what responsibility he had as the person in charge at the racetrack were overwhelmingly in support of his meeting several of the criteria for being a supervisor under the NLRA's three-part test. The court never even acknowledged that three-part test and, in fact, sifted through that evidence and just decided, again, going against the arbitrary and capricious standard. Here's the evidence that I think shows he's not a supervisor. I think you're out of time. Thank you both. We will reserve decision.